**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 0 8 2015

JAMES McCORMACK CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**JAMES NETHERLAIN**                                      **PLAINTIFF**

vs.                              No. 4:15-cv-\_197-BRW

**CAVALRY SPV I, LLC,**                                  **DEFENDANTS**
**and TEAVEN J. STAMATIS**

This case assigned to District Judge ___Wilson___
and to Magistrate Judge___Ray___

## ORIGINAL COMPLAINT

COMES NOW Plaintiff James Netherlain, by and through his attorneys Allison Koile and Josh Sanford of Sanford Law Firm, PLLC, and for his Original Complaint against Defendant Cavalry SPV I, LLC (hereinafter individually referred to as "Cavalry"), and Defendant Teaven J. Stamatis (hereinafter individually referred to as "Stamatis") (all parties adverse to Plaintiff collectively referred to hereinafter as "Defendants"), does hereby state and allege as follows:

### I.
### PARTIES, JURISDICTION AND VENUE

1.      This is an action for damages brought by an individual consumer for each Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (hereinafter the "FDCPA"), which prohibits debt collectors from engaging in abusive,

deceptive and/or unfair practices, as well as claims for violations of the Arkansas Deceptive Trade Practices Act.

2.    Plaintiff is an individual consumer and is protected under 15 U.S.C. § 1692, *et seq,* as well as by the common and statutory laws of the State of Arkansas including the causes of action plead herein.

3.    Plaintiff is an individual resident of Vilonia, Faulkner County, Arkansas.

4.    Cavalry is a foreign corporation registered to do business in the state of Arkansas, having identified The Corporation Company located at 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201, as its registered agent for service.

5.    Cavalry operates primarily to purchase and collect debts, and does so using the United States Postal Service, as well as the telephone, and regularly attempts to collect debts alleged to be due to another and therefore is and has been at all relevant times herein a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

6.    Teaven J. Stamatis is an individual citizen and resident of the state of Arkansas, admitted to practice law in the state of Arkansas, who provides legal representation to debt collectors as defined by 15 U.S.C. § 1692a, having a principal place of business at 12410 Cantrell Road, Suite 100, Little Rock, Pulaski County, Arkansas 72223.

7.    Defendant Stamatis also conducts the business of a debt collector and at times the actions taken by Defendant are either not those of an attorney or they are actions consisting of the blended duties of debt collector and attorney.

8.    Persons and corporations represented by Defendant Stamatis operate

primarily to collect debts, and do so using the United States Postal Service, as well as the telephone, and regularly attempt to collect debts alleged to be due to another and therefore are and have been at all relevant times herein a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

9.     Jurisdiction of this Court arises under 15 U.S.C. § 1692(k)(d) and 28 U.S.C. § 1337, in order to secure the relief authorized by the FDCPA, 15 U.S.C. §1692, *et seq*. Section 1692k(d) provides that jurisdiction lies in the Courts of the United States at the discretion of the aggrieved party.

10.    Moreover, the Eastern District of Arkansas has concurrent jurisdiction over all other claims herein based on all the underlying causes of action, including violations of the Arkansas Deceptive Trade Practices Act.

11.    Venue in this Court is further proper in that Defendants have brought an action to collect an alleged debt in an inferior state court located in this judicial district.

## II.
## FACTUAL BACKGROUND

12.    On or about July 28, 2014, Defendant Stamatis caused to be issued and filed a Complaint in the District Court of Faulkner County, Arkansas, against Netherlain on behalf of Cavalry who was collecting a debt which was allegedly assigned to or purchased by Cavalry from "Bank of America/FIA Card Services, N.A." A summons was not issued until September 22, 2014.

13.    A true and correct copy of the District Court Summons and District Court Complaint is attached hereto as Exhibit "A" and incorporated by reference as if set forth

word for word herein.

14.     As detailed below, the lawsuit referenced above was substantively and procedurally deficient in significant ways.

15.     The underlying lawsuit is based upon allegations that the defendant in the underlying lawsuit (Netherlain) failed to make payments or otherwise defaulted on a line of credit that originated from a lender who is not a party to the underlying lawsuit.

16.     The purpose of the underlying lawsuit was to collect an amount allegedly owed on a line of credit allegedly issued to Netherlain.

17.     As set forth more specifically below, the underlying lawsuit is deficient for a variety of reasons, including that it 1) lacks sufficient proof of an agreement regarding or consideration for the original debt; 2) lacks sufficient proof that the original debt was transferred to the plaintiff in the underlying lawsuit; 3) lacks sufficient proof that the affiant in the complaint in the underlying lawsuit had personal knowledge of any transactions, business records, or record-keeping practices as alleged by the affiant; 4) is facially barred by the applicable statute of limitations; and 5) violates Rule 10(d) of the Arkansas Rules of Civil Procedure.

18.     At all times relevant hereto, Defendants had full knowledge of the deficiencies described in the previous Paragraph.

19.     The debt at issue in the underlying lawsuit did not originate with Cavalry.

20.     Attached to the complaint in the underlying lawsuit is an Affidavit of Claim completed by an employee of Cavalry.

21.     The Affidavit purports to be made with authority from the plaintiff in the

underlying lawsuit.

22.    The affiant in the underlying lawsuit has no personal knowledge of the transactions alleged therein to have taken place between Netherlain and the debt originator.

23.    Neither the Affidavit nor any other document from the original lender attached to the complaint in the underlying lawsuit identifies the specific debt that is the subject of the district court lawsuit.

24.    Additionally, the underlying lawsuit lacks evidence of any written agreement creating the original debt and/or the actual extension of any loan or other thing of value to the alleged debtor in the underlying lawsuit.

25.    Defendant Cavalry did not own the debt at the time of filing the underlying action and failed to attach any documentation of any such alleged debt to the Complaint in the underlying action, in violation of Arkansas Rules of Civil Procedure 10(d).

26.    Defendants Stamatis and Cavalry knew they had no proof that Cavalry owned the debt at the time of filing.

27.    At the time of filing the underlying lawsuit, both Defendants knew they could not obtain proof of the debt that was allegedly owed to Cavalry.

28.    On November 24, 2014, Plaintiff Netherlain hired attorney Matthew Adlong to contact Defendants and request a copy of the original note and proof of assignment. Defendants failed to respond in any way to this letter.  A true and correct copy of this letter is attached hereto as Exhibit "B."

29.    On January 07, 2015, the underlying Faulkner County District Court case

was dismissed without prejudice as Defendants failed to provide proof of the debt that was allegedly owed to Cavalry.

30.     Thereafter, on January 15, 2015, Defendants filed a Motion to Reconsider and an Order to Reconsider was entered on January 20, 2015.

31.     Since that time, there has been no activity in the case.

32.     The underlying lawsuit is barred by the statute of limitations as set forth in Arkansas Code Annotated § 16-56-105(1) which states that "all actions shall be commenced within three years on all actions founded upon any contract not in writing." *See* also *Northwest Arkansas Recovery, Inc. v. Davis*, finding that "the three-year statute of limitation in Arkansas Code Annotated § 16–56–105(1)(1987) applies to actions on open accounts." *Northwest Arkansas Recovery, Inc. v. Davis,* 89 Ark. App. 62, 69, 200 S.W.3d 481, 486 (2004) (citing *Taylor v. Slayton,* 231 Ark. 464, 330 S.W.2d 280 (1960)).

33.     At all times relevant hereto, Defendants had full knowledge of the facts alleged herein above, yet pursued the underlying lawsuit despite this knowledge.

## III.
## FIRST CLAIM FOR RELIEF:
## DEFENDANT STAMATIS' VIOLATIONS OF FDCPA

34.     Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint above, as if fully set forth herein.

35.     Plaintiff asserts a claim for violations of the FDCPA against Defendant Stamatis, including multiple violations of Arkansas Rules of Civil Procedure 10 and 11 by Defendant Stamatis, including improper collection attempts by and blatant

misrepresentations in the pursuit of the underlying lawsuit against her.

36.     As attorney for the plaintiff in the underlying lawsuit against Plaintiff Netherlain, Defendant Stamatis is liable for the significant violations of the FDCPA as alleged herein.

37.     Defendant Stamatis pursued prosecution of the underlying lawsuit against Plaintiff at all times knowing, or in such a position as she should be charged with the knowledge, that the suit against Netherlain was not lawfully tenable.

38.     Plaintiff responded within thirty (30) days of the initial communication with a request for validation of the alleged debt pursuant to 15 U.S.C. § 1692g, disputing the debt alleged, by filing his Answer to the Complaint filed by Defendant Stamatis. As stated in *Thomas v. Law Firm of Simpson & Cybak*, "Service by creditor's law firm of a summons and complaint, filed in state court against debtor, was an "initial communication" within the meaning of the Fair Debt Collection Practices Act (FDCPA), such that its service triggered an obligation to notify debtor of his validation rights within five days." *Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914 (2004); see also, generally, *Goldman v. Cohen*, 445 F.3d 152 (2006).

39.     Despite Plaintiff's multiple requests, Defendant Stamatis failed to provide verification as required by 15 U.S.C. § 1692g(b). This failure, along with Defendant Stamatis' continued pursuit of collection of the alleged debt through the filing of the underlying lawsuit, constitutes additional violations of the FDCPA.

40.     Furthermore, Defendant Stamatis attempted to collect on a time-barred debt in violation of Arkansas Code and the FDCPA. The underlying lawsuit is barred by

the statute of limitations as set forth in Arkansas Code Annotated § 16-56-105(1) which states that "all actions shall be commenced within three years on all actions founded upon any contract not in writing." *See* also *Northwest Arkansas Recovery, Inc. v. Davis*, finding that "the three-year statute of limitation in Arkansas Code Annotated § 16–56–105(1)(1987) applies to actions on open accounts." *Northwest Arkansas Recovery, Inc. v. Davis,* 89 Ark. App. 62, 69, 200 S.W.3d 481, 486 (2004) (citing *Taylor v. Slayton,* 231 Ark. 464, 330 S.W.2d 280 (1960)).

41.    After failing to bring forth this action within the statute of limitations, Defendant Stamatis knew or should have known that the underlying action was time-barred and therefore, violated the FDCPA.

42.    Defendant Stamatis violated Arkansas Rules of Civil Procedure Rule 10(d) because Defendant failed to attach to the district court case complaint any document that would support a claim against Netherlain that would satisfy Rule 10(d) of the Arkansas Rules of Civil Procedure. As stated in *LVNV Funding, LLC v. Nardi,* "where a plaintiff alleges breach of contract, a copy of the relevant contract **must** be attached to the Complaint." *LVNV Funding, LLC v. Nardi*, 2012 Ark. 460, 2 (Ark. 2012). (emphasis added).

43.    Defendant Stamatis further violated the FDCPA as he knew or should have known that Defendant Cavalry did not have any proof or validation of the debt allegedly owed by Netherlain. It is a blatant violation of the FDCPA when a party does not possess and cannot acquire any proof of the alleged debt.

44.    Due to Defendant Stamatis' multiple violations of the FDCPA, Plaintiff was

forced to hire an attorney and defend himself in the underlying lawsuit, despite Defendant Stamatis' knowledge that the claims against Plaintiff were not legally tenable and could not be supported based on the facts then known to Defendant Stamatis.

45.     Actual damages to Plaintiff include attorney's fees and court costs in both this action and in the underlying action which spurred the filing of this action, as well as emotional distress, embarrassment, and mental anguish suffered by Plaintiff, all of which resulted from the actions and statements of Defendant Stamatis.

46.     By reason of the unlawful acts alleged herein, Defendant Stamatis is liable to Plaintiff for monetary damages, including actual damages, pre-judgment and post-judgment interest, statutory penalties and costs, including reasonable attorney's fees, all as provided for by the FDCPA.

## IV.
## SECOND CLAIM FOR RELIEF:
## DEFENDANT CAVALRY'S VIOLATIONS OF FDCPA

47.     Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint above, as if fully set forth herein.

48.     Plaintiff asserts additional claims for violations of the FDCPA against Defendant Cavalry including improper collection attempts and clear misrepresentations by Cavalry in the pursuit of the underlying lawsuit against her.

49.     As a qualifying debt collector and plaintiff in the underlying lawsuit, Defendant Cavalry is responsible for the significant violations of the FDCPA as alleged herein.

50.     Defendant Cavalry pursued prosecution of the underlying lawsuit against

Plaintiff at all times knowing, or in such a position as it should be charged with the knowledge, that the suit against Plaintiff Netherlain was not lawfully tenable.

51.    Plaintiff responded within thirty (30) days of the initial communication with a request for validation of the alleged debt pursuant to 15 U.S.C. § 1692g, disputing the debt alleged by filing her Answer to the Complaint filed by Cavalry.

52.    Despite Plaintiff's multiple requests, Defendant Cavlary has failed to provide verification as required by 15 U.S.C. § 1692g(b). This failure, along with Defendant Cavalry's continued pursuit of collection of the alleged debt through the filing of the underlying lawsuit, constitutes additional violations of the FDCPA.

53.    Cavalry likewise violated the FDCPA in the pursuit of the underlying lawsuit against Plaintiff by specifically directing an employee of Cavlary to execute a false Affidavit of Claim in the district court case.

54.    The Affidavit of Claim states, "That as of June 13, 2013, the balance dude and owing by the account holder(s) on the account was $1,505.44." This statement is highly misleading, if not blatantly false, in that no amount is lawfully owed by Netherlain.

55.    The Affidavit of Claim also contains false statements regarding the transfer of the original alleged debt to Cavalry in that there is no proof provided in the Affidavit or otherwise that this particularly alleged debt was, in fact, transferred to Cavalry. Affiant provides no information other than a blanket statement that a debt is owed by Netherlain in the sum of $1,505.44. Cavalry failed to provide any additional proof of this alleged debt.

56.    Cavalry's suggestion that Netherlain owes any amount to them or any other

related company, constitutes false, deceptive, and/or misleading representations or means in connection with the collection of debts in violation of 15 U.S.C. § 1692e.

57.    Moreover, upon Plaintiff's best information and belief formed after a reasonable inquiry, Cavalry has no knowledge whatsoever regarding any initial contract for services for the debt alleged. Plaintiff has requested verification of the initial debt multiple times from Defendant Cavalry but Cavalry is unable to provide this information.

58.    Cavalry's suggestion that it has knowledge of an amount owed by Plaintiff is a false, deceptive, and/or misleading representation in connection with the collection of debts in violation of 15 U.S.C. § 1692e.

59.    Furthermore, Defendant Cavalry attempted to collect on a time-barred debt in violation of Arkansas Code and the FDCPA. The underlying lawsuit is barred by the statute of limitations as set forth in Arkansas Code Annotated § 16-56-105(1) which states that "all actions shall be commenced within three years on all actions founded upon any contract not in writing." *See* also *Northwest Arkansas Recovery, Inc. v. Davis,* finding that "the three-year statute of limitation in Arkansas Code Annotated § 16–56–105(1)(1987) applies to actions on open accounts." *Northwest Arkansas Recovery, Inc. v. Davis,* 89 Ark. App. 62, 69, 200 S.W.3d 481, 486 (2004) (citing *Taylor v. Slayton,* 231 Ark. 464, 330 S.W.2d 280 (1960)).

60.    By failing to bring forth the underlying action within the statute of limitations, Defendant Cavalry knew or should have known that the underlying action was time-barred and therefore, violated the FDCPA.

61.    Defendant Cavalry violated Arkansas Rules of Civil Procedure Rule 10(d)

because Defendant failed to attach to the district court case complaint any document that would support a claim against Netherlain that could satisfy Rule 10(d) of the Arkansas Rules of Civil Procedure. Where a plaintiff alleges breach of contract, a copy of the relevant contract must be attached to the Complaint. *LVNV Funding, LLC v. Nardi*, 2012 Ark. 460, 2 (Ark. 2012).

62.    Due to Defendant Cavalry's multiple violations of the FDCPA, Plaintiff was forced to hire an attorney and defend himself in the underlying lawsuit, despite Defendant Cavalry's knowledge that the claims against Plaintiff were not legally tenable and could not be supported based on the facts then known to Defendant Cavalry.

63.    Actual damages to Plaintiff include attorney's fees and court costs in both this action and in the underlying actions which spurred the filing of this action, as well as emotional distress, embarrassment, and mental anguish suffered by Plaintiff, all of which resulted from the actions and statements of Defendant Cavalry.

64.    By reason of the unlawful acts alleged herein, Defendant Cavalry is liable to Plaintiff for monetary damages, including actual damages, pre-judgment and post-judgment interest, statutory penalties and costs, including reasonable attorney's fees, all as provided for by the FDCPA.

## V.
## THIRD CLAIM FOR RELIEF:
## DEFENDANTS' VIOLATIONS OF THE ARKANSAS
## DECEPTIVE TRADE PRACTICES ACT

65.    Plaintiff re-alleges and fully adopts and incorporates each of the allegations asserted above as if fully set forth herein.

66.    In improperly representing to the Faulkner County District Court and
to Plaintiff that Plaintiff owed a debt, Defendants engaged in false and deceptive
acts within the meaning of Ark. Code Ann. § 4-88-107(a)(10).

67.    Defendant Cavalry engaged in false and deceptive acts within the meaning of
Ark. Code Ann. § 4-88-107(a)(10) to the extent that any of the representations made by
them to the Pulaski County District Court, and/or to Plaintiff, are not grounded in actual
law.

68.    Defendant Teaven J. Stamatis engaged in false and deceptive acts within
the meaning of Ark. Code Ann. § 4-88-107(a)(10) to the extent that any of the
representations made by its employee to the Pulaski County District Court, and/or to
Plaintiff, are not grounded in fact.

69.    In taking the actions as set forth above, Defendants have engaged in
unconscionable, false, and/or deceptive acts or practices in its business, in violation of
Ark. Code Ann. § 4-88-107(a)(10).

70.    Defendant Cavalry's actions violate the Arkansas Deceptive Trade
Practices Act, Ark. Code Ann. § 4-88-107(a)(10) and 4-88-108 in that Defendant
knowingly engaged in unconscionable, false, or deceptive acts through their attempts to
collect invalid debts.

71.    Defendant Teaven J. Stamatis violated the Arkansas Deceptive Trade
Practices Act, Ark. Code Ann. § 4-88-107(a)(10) and 4-88-108 in that Defendant
knowingly engaged in unconscionable, false, or deceptive acts through his attempts to
collect invalid debts.

72.     The conduct described above and herein of all Defendants constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the ADTPA, Ark. Code Ann. §4-88-101, *et. seq.*

73.     Plaintiff is entitled to recover damages and a reasonable attorney's fee for every such violation pursuant to Ark. Code Ann. § 4-88-113(0).

WHEREFORE, premises considered, Plaintiff James Netherlain respectfully requests that Defendant Cavalry SPV I, LLC. and Defendant Teaven J. Stamatis each be summoned to appear and answer herein; for judgment in an amount to be proved at trial, such judgment consisting of compensatory and punitive damages; and for all attorney's fees and all court costs incurred herein; and for all other good and proper relief to which she may be entitled, whether or not specifically requested herein.

Respectfully submitted,

**PLAINTIFF JAMES NETHERLAIN**

SANFORD LAW FIRM, PLLC
ONE FINANCIAL CENTER
650 SOUTH SHACKLEFORD, SUITE 411
LITTLE ROCK, ARKANSAS 72211
TELEPHONE: (501) 221-0088
FACSIMILE: (888) 787-2040

By: _____
Allison Koile
Ark. Bar No. 2011154
allison@sanfordlawfirm.com

and _____
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

# IN THE DISTRICT COURT OF FAULKNER COUNTY, ARKANSAS
## CONWAY DIVISION

### SUMMONS
### (NOTICE OF LAWSUIT)

CAVALRY SPV I, LLC                                                                    **PLAINTIFF**

V.                                   CASE NO. _CUCV-14-689_

JAMES A NETHERLAIN                                                                    **DEFENDANT**


THE STATE OF ARKANSAS TO DEFENDANT:

James A Netherlain
44 Blair Dr
Vilonia, AR 72173

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it)–or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas–you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Teaven J Stamatis
P.O. Box 17248
Little Rock, AR 72222
(501) 227-2000

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office:
Faulkner County District Court
810 Parkway
Conway, AR 72032

COURT CLERK

_July 28, 2014_
DATE

EXHIBIT
A

S&A File No. 13-06120-0

Filed in District Court of
Faulkner County
7-28-14 ✔ , D. C.
9:42 AM

## IN THE DISTRICT COURT OF FAULKNER COUNTY, ARKANSAS
## CONWAY DIVISION

**CAVALRY SPV I, LLC**                                                    **PLAINTIFF**

**V.**                              CASE NO. CUCV – 14 - 689

**JAMES A NETHERLAIN**                                                **DEFENDANT**

### COMPLAINT

Comes the Plaintiff and for its cause of action against the Defendant, states:

1. That the Plaintiff is a foreign limited liability company authorized to bring this action under Ark. Code Ann. § 4-32-1008.

2. That the Defendant is a resident of Faulkner County, Arkansas.

3. Jurisdiction and venue are proper in this Court.

4. That Defendant purchased certain items with extensions of credit obtained on his/her BANK OF AMERICA/FIA CARD account. This account was purchased by, and assigned to the Plaintiff for good and valuable consideration.

5. That the amount past due on said account, which has not been paid, and has been owed for a period of time is as follows, principal amount, $1,505.44, as set out in Plaintiff's Affidavit which is attached hereto and incorporated herein by reference. The defendant breached the terms of the agreement attached hereto as Exhibit "A".

6. That demand had been made for the payment of same, yet the balance remains unpaid.

WHEREFORE, Plaintiff prays for Judgment against Defendant in the amount of $1,505.44, for all costs herein paid and expended, for post-judgment interest at the statutory rate, reasonable attorney's fees, and for all other proper relief.

                              Allen & Withrow
                              Attorneys at Law
                              P.O. Box 17248
                              Little Rock, AR 72222


                              _____
                              Teaven Stamatis (2008064)

S&A File No. 13-06120-0

No. _____   This summons is for **JAMES A NETHERLAIN**

## PROOF OF SERVICE

❏   I personally delivered the summons and complaint to the individual at
_____ on _____; or

❏   I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏   I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____ with
_____, a person at least 14 years
of age who resides there, on _____; or

❏   I delivered the summons and complaint to _____, an
agent authorized by appoint or by law to receive service of summons on behalf of
_____ on _____; or

**Description of person receiving documents:**
      The person receiving the documents is described as follows:
      Skin Color_____Sex_____Hair Color_____Facial Hair_____
      Age_____(prox) Height_____(prox) Weight_____(prox)

❏   I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❏   I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❏   Other
[specify]:_____
_____

❏   I was unable to execute service because:
_____
_____
_____

My fee is $_____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date:_____ SHERIFF OF _____ COUNTY, ARKANSAS

By:_____

_____
(Print Name, Title& Badge No.)

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date:_____

By:_____

_____
(Print Name)

Adress: _____

_____

Phone _____

Subscribed and sworn to before me this date:_____

_____
Notary Public

My Commission Expires:

_____

Additional information regarding service or attempted service:

_____
_____
_____
_____
_____

Department of Defense Manpower Data Center

Results as of : Aug-21-2013 06:54:16

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>NETHERLAIN</u>

First Name: <u>JAMES</u>

Middle Name:

Active Duty Status As Of: <u>Aug-21-2013</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html.  If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you.  See 50 USC App. § 521(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections.  Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: X4SDH763A0A2D10

## AFFIDAVIT OF CLAIM

STATE OF NEW YORK     )
                          ) SS
COUNTY OF WESTCHESTER )

RE: Cavalry SPV I, LLC

vs.
JAMES A NETHERLAIN

I, Bianca Perez, being duly sworn on oath, depose and say:

1. I am an agent and duly authorized representative for Plaintiff and am competent to testify to the matters set forth herein.

2. I am acting in the capacity of Legal Administrator for my employer Cavalry Portfolio Services LLC, a Delaware limited liability company. Cavalry Portfolio Services, LLC performs recovery services for its affiliate, Cavalry SPV I, LLC. In performing recovery services for Cavalry SPV I, LLC, I am familiar with and have access to the books and records of Cavalry SPV I, LLC and of Cavalry Portfolio Services, LLC.

3. That the defendant, JAMES A NETHERLAIN, the account holder(s), opened an account with Bank of America/FIA Card Services, N.A. on 4/25/2006, which account became delinquent and was charged off on 4/30/2010 (the "Account").

4. As of 6/13/2013, the balance due and owing by the account holder(s) on the account was
$1,505.44                                        . The principal balance continues to accrue interest at a rate of 0%. The account holder(s) have been credited for all payments, set-offs or other credits due.

5. That the Account was purchased by Cavalry SPV I, LLC on or about 3/14/2012 .

6. In the normal course of business, Cavalry Portfolio Services, LLC maintains computerized account records for account holders. Cavalry Portfolio Services, LLC maintains such records in the ordinary and routine course of business and is charged with the duty to accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or very near the time of any such occurrence. I have reviewed the applicable computer record as it relates to the Account, and I make this Affidavit based upon information from that review, and if called as a witness, I could testify to the matters set forth herein based on that review.

7. In connection with the purchase of the account, Bank of America/FIA Card Services, N.A. transferred copies of its electronic business records to Cavalry SPV I, LLC, which records were loaded into the computer system of Cavalry Portfolio Services, LLC and which are maintained in an electronic format.

8. Upon information and belief, no Defendant is an infant or incompetent or an active member of the United States Armed Forces who would be entitled to stay relief.

9. Under oath, I am authorized to make this affidavit for Plaintiff and I am informed and believe the above statements are true and correct.

Subscribed and sworn to before me on 8/22/2013

_____
Legal Administrator

_____
Notary Public, State of New York

Jlen and Withrow
7424814

Daniel Brito
Notary Public - State of New York
No. 01BR6141638
Qualified in Westchester County
Commission Expires February 27, 2014

PLAINTIFF'S
EXHIBIT
A

**7.11.3: Recurring Transactions.** If you authorize a merchant to charge your Account for repeat transactions without your Card, you must notify the merchant when you want to discontinue the repeat transactions or if your Account is closed or a new Account number is issued by us.

**7.11.4: Dispute Assistance.** If you disagree with a transaction on your Statement or have a dispute with the merchant as a result of the transaction, you will provide information or assistance we reasonably request. Otherwise, you will pay us for any resulting loss we have unless we are prohibited by applicable law from holding you liable for our loss.

**7.12: Default.** Your Account is in default if you fail to comply with any of the terms of this Agreement or any other loan agreement with us or anyone else, in the event of your death, incompetency, bankruptcy, insolvency, fraud or misrepresentation, or if we reasonably believe that you will be unwilling or unable to pay debts you owe to anyone. If you are in default, we may close your Account without notice, and you must immediately pay your unpaid balance. To the extent not prohibited by law, if you are in default, you will pay our collection costs, attorney fees (including allocated costs for attorneys who are employed by us), court costs and all other expenses of enforcing our rights under this Agreement.

**7.13: Closing Your Account.** You may close your Account by notifying us. We may close your Account or suspend your credit privileges at any time without prior notice except as required by law. You will stop using your Account and destroy all Cards and Checks on your Account. All Liable Parties' and Authorized Users' liability will apply to all balances and transactions made on the Account even if they are made or processed after the date the Account is closed.

If we receive a request from any Liable Party to remove another Liable Party from the Account, we may honor or refuse the request without prior notice.

**7.14: AMENDMENT OF THIS AGREEMENT. WE MAY AMEND THIS AGREEMENT BY CHANGING, ADDING OR DELETING ANY TERM, CONDITION, SERVICE OR FEATURE ("NEW TERM") OF YOUR ACCOUNT OR OF THIS AGREEMENT AT ANY TIME. WE WILL PROVIDE YOU WITH NOTICE OF THE AMENDMENT TO THE EXTENT REQUIRED BY LAW. UNLESS WE STATE OTHERWISE, ANY NEW TERM WILL APPLY TO YOUR ACCOUNT'S UNPAID BALANCE AND TO NEW ACTIVITY ON YOUR ACCOUNT. IF THE AMENDMENT INCLUDES ANY CHANGE TO THE RATE OR RATES OF PERIODIC INTEREST THAT APPLIES TO YOUR EXISTING BALANCES, WE WILL OBTAIN YOUR CONSENT BEFORE THAT NEW TERM BECOMES EFFECTIVE. IF WE NEED TO DO SO, WE MAY OBTAIN YOUR CONSENT IN ANY ONE OR MORE OF THE FOLLOWING WAYS: (A) BY YOUR USAGE OF THE ACCOUNT AFTER WE GIVE YOU NOTICE OF THE AMENDMENT; (B) BY YOUR FAILURE TO WRITE TO US ON TIME IF WE REQUEST THAT YOU WRITE TO US TO REJECT A NEW TERM; OR (C) BY YOUR AFFIRMATIVE AGREEMENT WHICH MAY BE OBTAINED VERBALLY, IN WRITING OR ELECTRONICALLY. ANY OTHER TERM IN THE AMENDMENT WILL BECOME EFFECTIVE WITHOUT YOUR CONSENT, ALTHOUGH YOU MAY BE ABLE TO AVOID A FEE OR CHARGE BY NOT MAKING THE TYPE OF TRANSACTION TO WHICH IT APPLIES AFTER THE EFFECTIVE DATE OF THE AMENDMENT.**

**7.15: Foreign Currency Transactions/Fees.** If you make a transaction in currency other than U.S. dollars, MasterCard or Visa will convert the charge or credit into a U.S. dollar amount. The conversion rate on the processing date may differ from the rate on the date of your transaction.

The exchange rate used by Visa will either be (i) a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may differ from the rate Visa receives, or (ii) the government-mandated rate in effect for the central processing date. MasterCard will use an exchange rate of either (i) a wholesale market rate or (ii) a government-mandated rate. We will charge you an International Transaction Fee of 3% of the US Dollar amount for each converted purchase and cash advance transaction. These amounts will be added together for each converted purchase and cash advance transaction made during a billing cycle and the total amount will appear on your billing statement as an "International Transaction Fee."

**7.16: Telephone Monitoring.** We may listen to and record telephone calls between you and us for the purpose of monitoring and improving the quality of service you receive.

**7.17: Enforceability.** Our failure to exercise any of our rights under this Agreement will not waive any of our rights in the future. If any terms of this Agreement are found to be unenforceable, all other provisions will remain in full force.

**7.18: Governing Law.** THIS AGREEMENT IS GOVERNED BY APPLICABLE DELAWARE AND FEDERAL LAW.

**7.19: Arbitration.** Any dispute, claim, or controversy ("Claim") by or between you and us (including each other's employees, agents, or assigns) arising out of or relating to this Agreement, your Account, or the validity or scope of any provision of this Agreement including this arbitration clause shall, upon election by either you or us, be resolved by binding arbitration. Arbitration shall take place before a single arbitrator on an individual basis without resort to any form of class action. Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.

Arbitration, including selection of an arbitrator, shall be conducted in accordance with the rules and procedures for initiating arbitration of the American Arbitration Association ("AAA"). You may contact AAA at 335 Madison Avenue, Floor 10, New York, NY 10017-4604 or http://www.adr.org, to obtain rules and forms to initiate arbitration. If AAA is unable or unwilling to serve as the provider of the arbitration or enforce any of the provisions of this agreement, we may substitute another national arbitration organization with similar procedures. This arbitration section of this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16. Judgment upon arbitration may be entered in any court having jurisdiction. Arbitration shall be conducted in the federal judicial district in which your billing address is located at the time the claim is filed. If we request arbitration, we will advance applicable AAA fees and expenses. If the arbitrator rules in favor of one party against the other, the other party shall pay all reasonable attorney's fees and costs of the action on behalf of both parties (including any fees and expenses paid by one party on behalf of the other) unless the arbitrator or court decides such an award would cause a substantial injustice based on the facts and legal arguments set forth in the action.

YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS, EXCEPT AS OTHERWISE PROVIDED ABOVE. ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE.

**7.20: Payment by Phone.** When using the Payment by Phone option, you authorize us to initiate electronic payments from your designated account at the financial institution you indicate for the purpose of making any payment on your Account. You must authorize the timing and amount of each payment transaction by using your Payment by Phone Personal Identification Number (PIN).

**7.20.1: Effective Date of Payment.** Payment will occur on the date you requested.

**7.20.2: Dishonored Request for Payment.** If a payment is dishonored for any reason, including insufficient funds, we, in accordance with your Cardholder Agreement, and your financial institution may assess a fee. If a payment is dishonored by your financial institution for "insufficient funds", we will attempt to initiate the electronic payment one more time before deeming the payment unpaid. You understand that if a payment is dishonored, your Account will be considered due for that payment (if the minimum payment due has not been met), and other payment arrangements will need to be made.

**7.20.3: Revocation of a Payment.** You have until 4:00 PM EST the day of the scheduled payment to cancel or revoke that payment.

**7.20.4: Payment by Phone Personal Identification Number (PIN).** You acknowledge the PIN issued by us to authorize and authenticate a Payment by Phone transaction will be kept confidential.

**7.20.5: Authorization and Security Procedure.** A Payment by Phone transaction will not occur unless you initiate the payment through the Bank's automated response unit or speak with a Bank customer service representative. You agree that the security procedures followed by the Bank to authenticate your consent to a Payment by Phone transaction, although not in writing, are reasonable, and agree to be bound by them as if you had signed this Authorization in writing.

**BILLING RIGHTS SUMMARY**

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us in a separate letter at the address indicated in the Billing Rights Summary on your Statement. Write us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and Account number.

• The dollar amount of the suspected error

• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notices**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right.

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

---



**Bank of America**

**CARDHOLDER AGREEMENT**

**We reserve the right to change the terms of this Agreement at any time, as further described in Section 7.14.**

**Section 1: INTRODUCTORY PROVISIONS**

**1.1: Contents and Effectiveness of Agreement.** This Agreement governs your credit card account ("Account") with us. It consists of this document, an enclosed "Additional Disclosure" and other documents that we may refer to as part of the Agreement. The Agreement becomes effective and you agree to its terms by either using your Account or by not closing your Account within 3 days of receipt of this Agreement.

**1.2: Parties to Agreement.** "We," "us," and "our" refer to Bank of America, N.A. (USA). "You," "your," and "yours" refer to any person (a) whose name appears on a Card or Statement or who uses this Account, or (b) who otherwise agrees to be liable on the Account.

**1.3: Definitions.** In addition to other terms defined throughout the Agreement, the following terms have the meaning indicated in this Section:

**1.3.1:** "APR" means Annual Percentage Rate

**1.3.2:** "Billing Cycle" means a period of about one month ending on a billing date.

**1.3.3:** "Card" means a Bank of America credit card issued on your Account.

**1.3.4:** "Convenience Check" means a non-promotional check drawn on your Account.

**1.3.5:** "Margin" means the number of percentage points added to the Index to determine an APR.

**1.3.6:** "MasterCard" means MasterCard International, Inc.

**1.3.7:** "Statement" means an Account billing statement.

**1.3.8:** "Unauthorized Charge" means a transaction made on your Account by a person, other than any one of you, who does not have actual, implied, or apparent authority to make such transaction, and from which none of you receive any benefit.

**1.3.9:** "Visa" means Visa U.S.A. Inc.

**1.3.10:** "Business Day" means Monday through Friday, excluding federal bank holidays.

**Section 2: USE OF YOUR ACCOUNT**

**2.1: Types of Transactions.** You may use your Account for the following types of consumer transactions.

**2.1.1: Purchases.** Purchase goods or services with your Card.

**2.1.2: Cash Advances.** Obtain cash from a participating financial institution or merchant ("Cash Disbursement") or from an ATM ("ATM Advance"), write a Convenience Check for any legal purpose ("Convenience Check Advance") or purchase money orders, travelers checks, foreign currency, lottery tickets, casino chips, racetrack wagers, vouchers redeemable for cash or other items readily convertible into cash ("Quasi Cash"), or transfer funds from your Account to your Bank of America personal checking account for overdraft protection ("Overdraft Protection").

**2.1.3: Balance Transfers.** Transferred balances to your Account from other creditors, except those made using a Convenience Check.

**2.2: Limitations on Use**

**2.2.1: General Consumer Account.** In addition to any other contractual or legal restrictions, the use of your Account is limited as described below. Your Account is a consumer Account and should not be used for business purposes.

**2.2.2: Legal Transactions.** You will only use your Account for transactions that are legal where you conduct them. For example, Internet gambling transactions may be illegal in your state. Display of a payment card logo by an online merchant does not mean that an Internet transaction is legal where you conduct it. We may charge your account for such transactions. We will not be liable if you engage in an illegal transaction. We may deny authorization of any transactions identified as Internet gambling.

**2.2.3: Credit Line and Cash Limit.** Your Account has a credit line ("Line") shown on your card carrier or Statement. You will not allow your Account balance to exceed the amount of this Line. If your Statement also shows a limit for Cash Advances ("Cash Limit"), you will not allow your Cash Advance balance to exceed your Cash Limit. We may change your Line or Cash Limit at any time. We may, but are not required to, approve transactions that exceed your available Line or Cash Limit.

**2.2.4: Authorizations.** Some transactions require our prior authorization. We may limit the number of authorizations we give in a day. We may deny authorization if you are in default (as defined in Section 7.12), if we suspect fraudulent activity or for other reasons. We are not liable for any failure to authorize a transaction. We are liable for any transaction we authorize even if we should not have authorized it because you are or would be in default as a result of the transaction.

**2.2.4.1: Internet Transactions:** If your card is a Visa branded card, then your card is automatically enrolled in the Verified by Visa program. In order to make transactions over the Internet merchants may request your Verified by Visa password to complete the transaction. If a password is not provided the merchant may deny the transaction. If the password is incorrect we may deny the transaction. You can select or change your password and view additional terms online at http://www.bankofamerica.com/creditcards/ and clicking on the Verified by Visa link. By allowing another to use your Verified by Visa password you are authorizing the transaction on your account.

**2.2.5: Unpaid Checks.** We may reject and return unpaid a Check you write because.

(a) Your available Line or Cash Limit has been or would be exceeded by paying the Check at the time it is presented to us;
(b) Your Check is post-dated. If a post-dated Check is paid, resulting in another check being returned or not paid, we are not responsible;
(c) The date of your Check is more than 6 months old;
(d) Your Account is closed or suspended;
(e) You are in default or would be so if we paid the Check;
(f) Your signature or the payee's name or endorsement is missing on the Check, or the Check appears altered.

If we pay any Check under any condition, you must pay us the amount of the Check plus applicable fees and charges unless such liability is precluded by law.

**Section 3: FINANCE CHARGES**

**3.1: Grace Period.** We do not charge any periodic Finance Charges on your new Purchases if: (1) You pay your New Balance in full by your Payment Due Date, or (2) Your previous New Balance was zero or a credit balance. There is no grace period for Cash Advances and Balance Transfers.

**3.2: Periodic Finance Charge Calculation.** For each day in the Billing Cycle, we take your beginning balance, add any new transactions or other debits, and subtract any payments or other credits. This gives us that day's Daily Balance. We multiply this Daily Balance by the Daily Periodic Rate to get your Periodic Finance Charge for that day. We add these Periodic Finance Charges to your Daily Balance to get the beginning balance for the next day.

To get your total Periodic Finance Charges for that Billing Cycle, we add all the Daily Periodic Finance Charges and round the sum to the next highest cent. This amount is also equal to the Average Daily Balance multiplied by the Daily Periodic Rate and then multiplied by the number of days in the Billing Cycle. To determine the Average Daily Balance, we add all your Daily Balances and divide by the number of days in the Billing Cycle.

We do this calculation separately for each feature such as Purchases, Cash Advances, Balance Transfers or Promotional Balances. Periodic Finance Charges begin to accrue from the later of the transaction date or the billing date of the Statement on which the transaction appears.

**3.3: Periodic Rates and Annual Percentage Rates**

**3.3.1: Rates.** The Daily Periodic Rates and the corresponding Annual Percentage Rates for your Account are listed on the "Additional Disclosure". The Daily Periodic Rate is the corresponding Annual Percentage Rate divided by the number of days in a year rounded to the next highest hundred thousandth of a percentage point.

**3.3.2: Variable Rate Information.** One or more of the APRs described in your Additional Disclosure may vary with changes in the Prime Rate. All such variable APRs are determined by adding the appropriate Margin, as set forth in your Additional Disclosure, to the Index. The Margin is the percentage that we add to the Index to calculate your APRs. The Index is determined on the last day of each month and is the highest prime rate published in the Money Rates section of The Wall Street Journal at any time within the immediately preceding three months (the "Index Date(s)"). This rate does not necessarily represent the lowest prime rate or Bank of America's lowest rate. The variable Periodic Rates and corresponding Annual Percentage Rates will increase if the Index increases and decrease if the Index decreases. All rate changes take effect on the first day of the Billing Cycle that ends in the calendar month following the most recent Index Date. An increase to your Periodic Rate and the corresponding Annual Percentage Rate will increase the amount of Finance Charge on your Account and may also increase your Minimum Payment Due.

**3.4: Minimum Purchase Finance Charge.** Whenever the Purchase balance is subject to a periodic Finance Charge, we will charge the greater of that periodic Finance Charge or the Minimum Finance Charge for Purchases shown in the "Additional Disclosure".

**3.5: Cash Advance and Balance Transfer Fees.** For each Cash Advance, we will charge the Cash Advance Fee shown on the "Additional Disclosure", rounded to the next highest cent, and add the fee to the Cash Advance balance on the transaction date. Balance Transfers and Promotional Balances will also incur these Cash Advance Fees unless we state otherwise in our offer.

**Section 4: OTHER FEES AND CHARGES**

**4.1: Types of Other Fees and Charges.** We will charge the following fees and other charges:

**4.1.1: Annual Fee.** If an Annual Fee applies to your Account, it will be billed each year.

**4.1.2: Late Payment Fee.** A Late Payment Fee if we do not receive at least the Minimum Payment Due by its Payment Due Date.

**4.1.3: Overlimit Fee.** An Overlimit Fee if your Account exceeds its Line at any time during a Billing Cycle.

**4.1.4: Returned Payment Fee.** A Returned Payment Fee for any payment on your Account that is returned to us unpaid

**4.1.5: Stop Payment Fee.** A Stop Payment Fee for any request made to stop payment on a Check unless we have posted the Check to your Account before your request.

**4.1.6: Copy Charge.** A Copy Charge for a Statement, sales draft, Check, or other record of your Account other than for a billing dispute you may assert against us pursuant to applicable law.

**4.1.7: Research Fee.** A Research Fee for our time researching something requested on your Account other than for a billing dispute you may assert against us pursuant to applicable law.

**4.1.8: Photo Expressions Photo Change Fee.** If you have Photo Expressions on your Card, a Photo Change Fee for changing the photograph.

**4.2: Amount of Other Fees and Charges.** The amount of Other Fees and Charges are listed on the "Additional Disclosure" and added to the Purchase balance of the Account on the day these fees and charges are assessed.

**Section 5: YOUR LIABILITY**

**5.1: Liable Parties.** If your name appears on a Statement, our records show that you are liable for the full balance due on the Account. By using your Account or making a payment on the Account knowing that your name appears on any Statement, you agree that our records are accurate. In addition, you are liable for the full balance due on the Account if you have agreed to be liable (even if your name does not appear on a Statement). In each case described above, you will be individually and jointly liable ("Liable Party") for all credit extended on the Account (other than for Unauthorized Charges) including any Finance Charges, Other Fees and Charges, and expenses as provided in the Agreement. If your legal residence or Statement address is in a country outside the United States, the government of that country may impose a withholding tax on the Finance Charges due on your Account. You are liable for such tax and we may charge the amount of the tax to your Account if you do not pay.

**5.2: Other Users of the Account.** If you are not a Liable Party and you use this Account, you are liable for each transaction you make on the Account plus any Finance Charges, Other Fees and Charges, and expenses provided in this Agreement and related to such transactions. If you are an Authorized User (as defined in Section 7.9), your liability does not relieve any Liable Party other than the Authorized from liability for any Authorized User's transactions until paid.

**Section 6: YOUR PAYMENTS**

**6.1 Promise to Pay.** You promise to pay us for all transactions on your Account for which you are liable under Section 5 or by law. If a bank branch or office sponsors your Account, you promise to pay it any unpaid Account balance it pays us within 30 days. If an Account payment is invalid, we will reverse any credit previously provided for such payment.

In addition, we will credit your payment to your Account upon receipt; however, we may not immediately make credit available on your Line for the amount of any payment received.

Where you have provided a cell phone number directly to us, or placed a cell phone call to us, you consent and agree to accept collection calls to your cell phone from us. For any telephone or cell phone calls we place to you, you consent and agree that those calls may be automatically dialed and/or use recorded messages.

**6.2: Allocation of Payments.** We will allocate your payments in the manner we determine. In most instances, we will allocate your payments to balances (including transactions made after your latest statement) with lower APRs before balances with higher APRs. This will result in balances with lower APRs (such as new balances with promotional APR offers) being paid before any other existing balances.

**6.3: Minimum Payment Due.** You will pay at least the Minimum Payment Due in the amount shown in your "Additional Disclosure" by the Payment Due Date on your Statement.

**6.4: Form of Payment.** For all amounts you owe on your Account, you will pay us in U.S. dollars. All payments (other than cash payments at our Banking Centers or ATMs) must be drawn from funds on deposit in a U.S. depository financial institution. We may, at our option, accept payments made in foreign currency or checks drawn on non-U.S. banks. If we do, we may impose service and collection charges. Our determination of service and collection charges will be final. We are not required to accept any payment that we deem to require special handling.

**6.5: Payments Marked "Paid in Full".** We may accept letters, checks or other types of payment showing "payment in full" or using other language to indicate satisfaction of your debt, without waiving any of our rights to receive full payment under this Agreement. You must send any such communication to the "Billing Rights Summary" address on your Statement. Satisfaction of your debt for less than the full amount due requires a written agreement, signed by one of our authorized associates.

**Section 7: OTHER IMPORTANT INFORMATION**

**7.1: Signature.** You should sign the back of your Card as soon as you receive it to help protect your Account from unauthorized use. However, your liability under Section 5 does not depend on whether you sign your Card.

**7.2: No Security Interest on Purchases.** This Agreement does not grant us a security interest in Purchases you charge to your Account.

**7.3: Account Materials.** We may send Account materials (Cards, Statements and notices) to any Liable Party, and that person will be responsible for delivering those materials to the other Liable Parties and Authorized Users. Notice to any of you will be considered notice to all of you.

**7.4: Change of Personal Information.** You will notify us in writing immediately if you change your name, address or home or business telephone number. If we do not have a valid address because you failed to update your information, then you are responsible for obtaining any account materials we would normally have delivered to your address.

**7.5: Credit Information.** We may periodically review your credit standing by obtaining information from credit reporting agencies and others concerning your accounts. You will provide updated financial information upon our request. In addition, we may report information about your credit reporting agencies. You have the right to dispute the accuracy of information we have reported. If you wish to do so, write to, Bank of America, P.O. Box 15595, Norfolk, VA 23510 Attn. CBR Disputes (VA6-300-06-09). Please include your name, address, Account number, telephone number, social security number and a brief description of the problem. If available, please include a copy of the credit report in question.

**7.6: Stopping Payment on Checks.** To stop payment on a Check you write, you must call us at the Customer Service number shown on your Statement with all the following information: the exact dollar amount of the Check; the Check number, your Account number; the name of the party to whom the Check was written and the name of the person who signed the Check.

We will stop payment on the Check if we receive your stop payment request by the business day before the day we pay your Check. This date we pay the Check may be before the date it posts to your Account. The stop payment order will remain effective for 6 months. You may write us to cancel the order at any time.

**7.7: Sharing Information.** We share information with our affiliates and others as described below:

**7.7.1: Sharing Information with Affiliates and Others.** We may share information that is solely about your transactions or experiences with you or your Account ("Experience Information") with our affiliates and others such as Visa, MasterCard, or your other creditors. We may also share with our affiliates non-experience information ("Non-Experience Information") such as information contained in your credit application or obtained by us from other sources. You can instruct us not to share Non-Experience Information by calling us toll-free at 1-888-341-5000, or by sending a written request to: Bank of America Customer Information Operations, P.O. Box 27025, Richmond, VA 23261-7025. Please be sure to include your name, address, telephone number, Account number, and social security number with your correspondence.

**7.7.2: Sharing Information with Companies that Work for Us.** We may occasionally share information with outside companies that work for us. These companies act on our behalf and are obligated to keep the information that we provide to them confidential.

**7.8: Solicitations.** We carefully select quality products and services to offer you discount savings and other valuable benefits arranged specially for our cardholders. You have choices when it comes to learning about new offers and services. For example, you can choose not to receive notification about any offers made by mail, telephone or e-mail. To tell us your preferences, you can: (1) Visit your nearby Banking Center, (2) Call us at the telephone number listed on your Statement, (3) Send us an e-mail, or (4) Write to us at the address indicated in the Billing Rights Summary on your Statement. Please be sure to include your name, address, telephone number, Account number, and social security number with your correspondence.

**7.9: Authorized Users.** You may allow Authorized Users on your Account in the following ways: (1) by notifying us that you want someone added to your Account as an Authorized User; (2) by lending your Card or Account number to another; or (3) by any other ways in which you would be legally considered to have allowed another to use your Account or to be legally prevented from denying that you did so. You must think carefully before you allow anyone to become an Authorized User. By doing so, you authorize the person to use your Account to the same extent you can, including but not limited to making any Purchases, Cash Advances, Balance Transfers and allowing others to use your Account. Your Account does not permit you to limit the nature or amount of authority you give to any Authorized User and you will not attempt to do so. An Authorized User's authority will continue until you both notify us that you are terminating the authority and you physically retrieve the Card. If you cannot retrieve the Card, you will remain liable for any transactions that we cannot prevent after your notify us.

**7.10: Lost or Stolen Cards and Checks.** If your Card or Checks are lost or stolen, or if you think your Account is being used without your permission, you must notify us immediately by calling the "Lost or Stolen Card" number on your Statement.

**7.11: Transactions with Merchants**

**7.11.1: Return Policy.** If a merchant discloses a policy such as "no returns", "no refund", "no return of credit without receipt", "as is", "store credit only", or "all sales final", you will be bound by that policy when you use your Account to buy goods or services from that merchant.

**7.11.2: Reservations.** When using your Account to make travel or lodging reservations, obtain the merchant's cancellation policy and follow it if you cancel. If you cancel, obtain the merchant's cancellation number that it is required to give you. The merchant may charge you for a cancelled transaction unless you can provide us with the merchant's cancellation number.



ATTORNEYS AT LAW

William C. Brazil
Matthew W. Adlong
Thomas W. Mickel
Dustin T. Chapman
James A. Marshall

matt@bamlaw.biz
jsmart@conwaycorp.net

Hillary Simmons, Assistant
Jessica Smart, Assistant
Shauna Walton, Assistant
Ruby Gilbert, Assistant

November 24, 2014

Lori Withrow
Allen & Withrow
Attorneys at Law
12410 Cantrell, Suite 100
Little Rock, AR 72223

      RE:    Cavalry Spv I, LLC vs. James A. Netherlain
              Faulkner Co. District Court Case No.: CWCV-14-689

Dear Lori:

This shall confirm our telephone conversation that you have extended time to file answers to requests for admissions and interrogatories pending an attempt to settle this matter. Upon further review, I noticed that there was no attachment to the Complaint containing either the original note and proof of the assignment which is required by the Arkansas Rules of Civil Procedure. Accordingly, if these documents cannot be provided, I request that this matter be settled for a very nominal amount or that we will expend the costs to defend this matter which we will ask for from your client. I look forward to hearing from you.

Sincerely,

Matthew W. Adlong

MWA/jfs
cc:    James Netherlain

**EXHIBIT**

B